# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 24, 2015

Plaintiff-Appellee,

v

No. 320085
Oakland Circuit Court
LC No. 2013-247025-FC

BOBBY LEE TAYLOR,

Defendant-Appellant.

Before: GADOLA, P.J., and JANSEN and BECKERING, JJ.

PER CURIAM.

A jury convicted defendant, Bobby Lee Taylor, of first-degree felony murder, MCL 750.316(1)(b),[1] and first-degree criminal sexual conduct (CSC). The trial court sentenced him as an habitual offender, fourth offense, MCL 769.12, to 75 to 120 years' imprisonment for the first-degree CSC conviction and life imprisonment for the felony-murder conviction. Defendant appeals as of right, and we affirm.

## I. BASIC FACTS

Defendant was convicted of sexually assaulting and murdering Rosaline Lee, whose body was discovered floating in a lake in Pontiac on May 26, 2013. The victim was naked except for a sports bra pulled up over her breasts. An autopsy revealed that the victim died of manual strangulation. Abrasions on her arms, trauma to her forehead, and other injuries were indicative of a struggle. The victim's vaginal swabs revealed the presence of semen deposited within the last 24 hours, and DNA testing of it matched defendant's DNA profile.[2] The victim was

---

[1] Defendant was also charged with first-degree premeditated murder, MCL 750.316(1)(a), and convicted of the lesser crime of second-degree murder. The parties stipulated, on double jeopardy grounds, to vacate the second-degree murder conviction.

[2] According to the forensic science testimony, in comparing the DNA sample to the general population, one in 323.1 sextillion Caucasians would match the profile, one in 6.734 quintillion African-Americans would match the profile, and one in 751.9 sextillion Hispanics would match the profile. Furthermore, because a sperm tail was visible, intercourse had occurred within 24 hours.

involved in a relationship with Julius Hall,[3] a longtime friend, and the victim's family members and friends reported that the victim never mentioned defendant's name or engaged in one-night stands.

The night before the victim's body was discovered, Jamar Carter, who had known Michelle Toth for two weeks and knew defendant "by face," invited Toth and defendant to his home. The three were observed on video cameras near a bus stop by St. Joseph's Hospital in Pontiac, and their bus ride was confirmed by the driver, Patricia Vuocolo, who exchanged phone numbers with defendant. Toth and defendant intended to engage in sexual relations in front of Carter, but Toth changed her mind and left to go to the hospital. After Toth and defendant left Carter's home, Carter discovered that three of his prescription bottles were missing. Carter's roommate, Andre Teasley, could not have been responsible for the missing bottles because he was hospitalized at the time. Telephone records and other evidence indicated that defendant had contacted multiple women that evening, but was not successful in connecting up with any of them. Defendant admitted in a police interview that he was trying to "hook up" with a woman that evening.

The victim was last seen at the Chase office building in Pontiac, where she went to meet the father of her child, Matthew Caffey, to obtain money for diapers. The victim called Caffey at 3:17 a.m. on May 26 to advise him that she was in the parking lot, but when Caffey began to exit the building, he saw the victim's white van drive out of the lot. Caffey believed there was another individual in the van, but his efforts to contact the victim by phone call and text went unanswered. The office building was 1-1/2 to 2 miles from the hospital where defendant was observed that evening. At approximately 9:00 a.m., a man answered Caffey's call to the victim's phone and indicated that he had found the phone in pieces on the ground.

The day after the victim's body was recovered, her white van was found near an abandoned school and wooded area. Prescription bottles belonging to Carter and Teasley were found in or near the van. Police contact with Carter led them to seek out defendant, and Vuocolo assisted the police by texting defendant to request his photograph. When brought into custody on June 5, 2013, defendant gave conflicting accounts of his whereabouts and contacts that weekend, denied the theft of any prescription medications, and invoked his right to counsel. During his statement, he admitted to parole violations because of his use of marijuana and alcohol. A parole hearing was held the next day and defendant received a 30-day sentence. While serving the sentence, a warrant was authorized against defendant for the victim's homicide. When interviewed a second time on June 20, 2013, defendant denied knowing the victim, but declined to speak further after invoking his right to counsel.

The prosecution's theory at trial was that defendant was on a "mission" to have sex on the night of May 25-26 and, after Toth reneged on their plan to have sex in front of Carter, and defendant was unsuccessful in connecting with other women, he encountered the victim at the Chase office building and seized upon that opportunity to carry out his mission, whereupon he

---

[3] Forensic examination of the DNA evidence excluded both Hall and Bernard Kimble—who will be discussed in more detail *infra*—as potential contributors.

apprehended, sexually assaulted, and then killed her. The defense denied that defendant was the perpetrator, and argued that the prosecution's witnesses were not credible, that there were other plausible suspects, and that the DNA evidence was the product of contamination.

## II. SUFFICIENCY OF THE EVIDENCE, IDENTITY

Defendant first argues that the evidence was insufficient to support his convictions. He does not dispute that there was sufficient evidence to prove that the victim was sexually assaulted and murdered, but argues that the evidence was insufficient to establish his identification as the perpetrator. The prosecution must prove a defendant's identity as the perpetrator of a charged offense beyond a reasonable doubt. See *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976); *People v Kern*, 6 Mich App 406, 409; 149 NW2d 216 (1967).

Appeals challenging the sufficiency of the evidence are reviewed de novo. *People v Henderson*, 306 Mich App 1, 8-9; 854 NW2d 234 (2014). This Court must review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). Circumstantial evidence and reasonable inferences arising from that evidence may constitute proof of the elements of the crime. *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). This Court's review is deferential, and the trier of fact, not the appellate court, properly determines what inferences may be fairly drawn from the evidence and the weight to be accorded those inferences. *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). Thus, all conflicts in the evidence are resolved in favor of the prosecution, *Bennett*, 290 Mich App at 472, and this Court will not interfere with the jury's assessment of the weight of evidence or the credibility of witnesses. *Dunigan*, 299 Mich App at 582; *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012).

The evidence revealed that on the night the victim was killed, defendant went to Carter's home with Toth to engage in sexual relations in front of Carter. However, Toth declined to participate, left Carter's residence, and checked into a hospital. Defendant left his phone number with Carter and indicated that he frequently had relations with women, and they would "hook" up another time. Later that evening, after defendant's departure, Carter realized that three of his prescription medicine bottles were missing. Carter's roommate at the time, Teasley, was hospitalized, and therefore, could not have committed the theft, and Carter did not have any other guests at his home.

The victim agreed to meet Caffey later that night at his office building to obtain money for diapers. The office building was 1-1/2 to 2 miles from St. Joseph's hospital, where defendant was last seen. The victim called Caffey at 3:17 a.m. to indicate that she had arrived at his building. When Caffey came downstairs, he saw the victim's van driving away from the building, and Caffey believed that someone else was in the van with the victim.

The victim was dating Hall, and her family and friends indicated that she did not engage in a promiscuous lifestyle and had never mentioned defendant's name. The victim's body was found the next morning in Terry Lake, and her bra was raised over her breasts. The evidence indicated that she struggled with her assailant, causing blunt force trauma to her forehead, abrasions to her arms, bruising to her elbow, and died from manual strangulation. Testing

revealed that DNA matching defendant's DNA profile was found in the victim's vagina. The victim's van was found the next day near an abandoned school, and prescription bottles belonging to Carter and his roommate were found near the vehicle. Defendant gave a statement to the police in which he acknowledged having relationships with various women and trying to "hook up" with a woman that evening.

The circumstantial evidence permitted the jury to infer that defendant took Carter's and Teasley's prescription medication when he was at Carter's home. Defendant's phone records indicated that he contacted multiple women that evening, but did not successfully connect up with any of them. However, the evidence revealed that defendant made contact with the victim within 24 hours of her death because his DNA was left in her vagina. Additionally, she had incurred multiple injuries, which she did not have before she left her home to meet with Caffey. The circumstantial, physical, and DNA evidence was sufficient to enable the jury to find beyond a reasonable doubt that defendant stole pills from Carter's home, encountered the victim at Caffey's office building and drove away with her in her van, and then sexually assaulted her before strangling her to death and placing her body in Terry Lake. The jury could find that defendant left the scene in the victim's van, which he left near an abandoned school, and that the presence of Carter's prescription medication in the vicinity of the van, which defendant had stolen earlier that night, further linked him to the victim's apprehension, sexual assault, and murder.

Defendant identifies various itemized points that he contends refute his identity as the perpetrator. However, the facts on which defendant relies to cast doubt on his guilt were submitted to the jury. Defendant essentially argues that the jury should have interpreted the evidence differently. Defendant's argument ignores that the weight and credibility of evidence, and the inferences to be drawn from the evidence, are matters for the jury to resolve. This Court must defer to the jury's determination of those matters, and we may not substitute our judgment for the jury's verdict. *Unger*, 278 Mich App at 222. Moreover, the prosecution was not required to negate every theory consistent with defendant's innocence, but only had to prove its own theory beyond a reasonable doubt regardless of contradictory evidence offered by defendant. *People v Chapo*, 283 Mich App 360, 363-364; 770 NW2d 68 (2009). The evidence was sufficient to enable the jury to find beyond a reasonable doubt that defendant was the perpetrator of the charged crimes.

## III. MOTION FOR A MISTRIAL

Next, defendant argues that the trial court abused its discretion by denying his motion for a mistrial after the prosecution introduced testimony that defendant sent a text photograph of his penis to Vuocolo, whom defendant met for the first time earlier on the same night that the victim was killed.[4] The photograph was sent when Vuocolo, acting in cooperation with the police, contacted defendant several days after the offense and asked for a photograph, claiming that she could not remember what he looked like. Defendant responded by first sending a photograph of

---

[4] The photograph itself was not admitted into evidence; rather, Vuocolo merely described having received the text.

his penis, and then a photograph of his face. Defendant argues that this evidence was irrelevant and so unduly prejudicial that a mistrial was required. We disagree.

We review a trial court's denial of a motion for a mistrial for an abuse of discretion. *People v Lane*, 308 Mich App 38, 60; 862 NW2d 446 (2014). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *Id.* The motion for a mistrial was related to the admission of evidence, which the trial court determined was relevant and not unduly prejudicial. A trial court's evidentiary decision is also reviewed for an abuse of discretion. *People v Jones*, 270 Mich App 208, 211; 714 NW2d 362 (2006). However, "[w]e review de novo the preliminary questions of law surrounding the admission of evidence, such as whether a rule of evidence bars admitting it." *Lane*, 308 Mich App at 51.

A mistrial should be granted only when an irregularity occurs that is prejudicial to the defendant's rights and impairs his ability to get a fair trial. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). A motion for a mistrial should be granted only when the prejudicial effect of an error cannot be removed in any other manner. *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008). The trial court denied defendant's motion for a mistrial because it found that the probative value of the disputed evidence was not substantially outweighed by the danger of unfair prejudice. Thus, the trial court's decision denying the motion for a mistrial was linked to its determination that the disputed evidence was admissible and not unduly prejudicial. Accordingly, if the disputed evidence was properly admitted, the trial court necessarily would not have abused its discretion by denying the motion for a mistrial. See *Schaw*, 288 Mich App at 236-238. Thus, we first consider defendant's argument that the disputed evidence was not relevant.

All relevant evidence is admissible unless excluded by constitution or court rule. *People v Fomby*, 300 Mich App 46, 48; 831 NW2d 887 (2013). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. However, relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice . . . ." MRE 403.

The prosecutor introduced the testimony that defendant sent Vuocolo a photographic image of his penis for its probative value in showing defendant's intent on the night the victim was killed. The prosecution's theory at trial was that defendant was on a mission to have sex on the night the victim was killed, had been unsuccessful in his efforts to connect with other women that evening, encountered the victim at the Chase office building, and decided to seize upon that opportunity to carry out his mission. Evidence of motive is relevant to show the intent necessary to prove murder. *People v Cipriano*, 238 Mich 332, 335; 213 NW 104 (1927); *People v Herndon*, 246 Mich App 371, 412-413; 633 NW2d 376 (2001). In *Cipriano*, 238 Mich at 335, our Supreme Court explained:

> It not infrequently happens in murder cases that no motive can be found for the commission of the crime. If capable of being shown, it may have an important bearing on the question of intent and on the probability that the accused killed the deceased. Or if it cannot be shown, it may have an important bearing on the question of intent and on the probability that the accused killed the

deceased. Or if it cannot be shown it is of great importance to the accused; for it is a matter of common belief that in the act of murder the normal mind must have been led by some motive sufficient to overcome its natural aversion to the taking of a human life. It is an important factor in any murder prosecution, but it is not an indispensable element in the people's case. It is not necessary for the jury to find a motive in order to convict.

The testimony regarding the penis text comported with the prosecutor's theory of the case that defendant's interest in sex was the motive for his commission of the charged offenses. Defendant characterizes the prosecutor's theory as "laughable," and argues that testimony regarding the penis image did not provide a motive for rape or murder. However, prosecutors are free to argue the evidence and all reasonable inferences with regard to their theory of the case. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). Although an individual's desire to engage in sexual acts does not necessarily equate with an intent to commit rape and murder, evidence that defendant's interaction with Vuocolo was sexually motivated on the night in question,[5] and that he was willing to text a photograph of his penis to a woman he had only briefly met a few days earlier, was probative of his interest in sex and the lengths he would go to satisfy his sexual needs, and was consistent with the prosecutor's theory that defendant selected the victim to satisfy those needs.

Moreover, the trial court did not abuse its discretion in ruling that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Defendant argues that the evidence was unduly prejudicial because the jury would naturally have a negative visceral reaction to it, and give it undue weight as being a horrible reflection on his character. However, in his statement to the police, defendant admitted that he was attempting to engage in sex that evening. Defendant acknowledged that he was juggling multiple women, he referred to himself as a "whore," he attempted to arrange a meeting with a prostitute on the night of the murder, he "hit" on bus driver Vuocolo and obtained her phone number, and he had intended to engage in sex with Toth in Carter's presence, but did not only because Toth backed out. Sex and women were a prominent discussion in defendant's statement to the police. Viewed against this backdrop, the testimony that defendant sent a text photograph of his penis to Vuocolo could not be deemed substantially more prejudicial than probative. Moreover, the reference to the text was isolated and the photograph itself was never admitted. Accordingly, the trial court did not err in determining that the evidence was relevant and that its probative value was not substantially outweighed by the danger of unfair prejudice. Therefore, the court also did not abuse its discretion in denying the motion for a mistrial, which was premised on that evidence.

## IV. EXCLUSION OF EVIDENCE

Defendant next argues that the trial court erred in excluding the testimony of a defense witness, Robert Combs, who was prepared to testify that Bernard Kimble admitted committing

---

[5] Vuocolo described defendant as "hitting on" her. He inquired whether she was married, asked for her phone number, and asked if she could go get coffee with him, which she declined because it was too late and she had to work.

the charged murder. Defendant argues that Combs's testimony was admissible under MRE 804(b)(3), as a statement against Kimble's penal interest, or MRE 803(24), the catchall hearsay exception, and that the trial court's exclusion of this testimony deprived him of his constitutional right to present a defense. The trial court's decision to exclude evidence is reviewed for an abuse of discretion. *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014). We review de novo preliminary questions of law as to whether evidentiary rules bar the admission of evidence. *Lane*, 308 Mich App at 51. In addition, whether a defendant suffered a deprivation of his constitutional right to present a defense is reviewed de novo. *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009).

"A defendant has a constitutionally guaranteed right to present a defense, which includes the right to call witnesses. US Const, Am VI; Const 1963, art 1, § 20[.]" *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008). But the right to present a defense may be limited by established rules of procedure and evidence to ensure both fairness and reliability in ascertaining guilt and innocence. *People v Toma*, 462 Mich 281, 294; 613 NW2d 694 (2000), citing *Chambers v Mississippi*, 410 US 284, 302; 93 S Ct 1038; 35 L Ed 2d 297 (1973). As this Court explained in *People v Orlewicz*, 293 Mich App 96, 101-102; 809 NW2d 194 (2011):

> The right to present a defense is not absolute or unfettered. A trial court may exclude evidence if its probative value is outweighed by factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. Therefore, a court may exclude evidence that is repetitive, only marginally relevant, or poses an undue risk of harassment, prejudice, or confusion of the issues. Similarly, defendants are entitled to present witnesses in their defense, but again that right is not absolute. "To the contrary, it requires a showing that the witness' testimony would be both material and favorable to the defense." The underlying question is whether the proffered evidence or testimony is relevant and material, or unfairly prejudicial. [Citations omitted.]

The exception in MRE 804(b)(3) provides that the following statement is not excluded by the hearsay rule if the declarant is not available as a witness:

> A statement which was at the time of its making . . . so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. *A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.* [Emphasis added.]

Because defendant was seeking to introduce a statement that tended to expose Kimble, the declarant, to criminal liability, and the statement was offered to exculpate defendant, defendant had the burden of showing that corroborating circumstances clearly indicated the trustworthiness of the statement. *People v Miller*, 141 Mich App 637, 642; 367 NW2d 892 (1985). The requirement of corroborating circumstances is enforced. *People v Bowman*, 254 Mich App 142, 147-148; 656 NW2d 835 (2002).

The catchall hearsay exception, MRE 803(24), provides:

**Other Exceptions.** A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact, (B) the statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts, and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of the statement makes known to the adverse party, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

As our Supreme Court explained in *People v Katt*, 468 Mich 272, 279; 662 NW2d 12 (2003):

[E]vidence offered under MRE 803(24) must satisfy four elements to be admissible: (1) it must have circumstantial guarantees of trustworthiness equal to the categorical exceptions, (2) it must tend to establish a material fact, (3) it must be the most probative evidence on that fact that the offering party could produce through reasonable efforts, and (4) its admission must serve the interests of justice. Also, the offering party must give advance notice of intent to introduce the evidence.

Thus, MRE 804(b)(3) and MRE 803(24), respectively, require that there be corroborating circumstances indicative of trustworthiness, *Miller*, 141 Mich App at 642, or circumstantial guarantees of trustworthiness, *People v Lee*, 243 Mich App 163, 178; 622 NW2d 71 (2000), to allow admission of Kimble's alleged confession to Combs.

In *Lee*, 243 Mich App at 178, this Court delineated the following factors to determine whether certain statements have particularized guarantees of trustworthiness when considering the totality of the circumstances:

(1) the spontaneity of the statements, (2) the consistency of the statements, (3) lack of motive to fabricate or lack of bias, (4) the reason the declarant cannot testify, (5) the voluntariness of the statements, i.e., whether they were made in response to leading questions or made under undue influence, (6) personal knowledge of the declarant about the matter on which he spoke, (7) to whom the statements were made . . . , and (8) the time frame within which the statements were made. [Citations omitted.]

Defendant did not establish that there were particularized guarantees of trustworthiness to demonstrate the reliability of Kimble's alleged confession. Combs testified that he had limited contact with Kimble on four occasions, and that Kimble was always intoxicated, angry, and irate. Combs stated that Kimble was intoxicated and slurring his words when he began to give details

about putting a "young girl" in a "river," at which point Combs cut him off. This testimony did not present corroborating circumstances or circumstantial guarantees of trustworthiness. Kimble made the alleged statement while in an intoxicated state, and his limited statement did not reveal actual knowledge or details of what transpired, only what would have been reported in the community in news reports. Moreover, Kimble's unavailability was not adequately explained. Defense counsel asserted that Kimble was unavailable because he would not appear to incriminate himself, but counsel also acknowledged that, as a matter of trial strategy, he did not intend to call Kimble to testify. Rather, counsel stated that he had reviewed Kimble's statement, knew Kimble had passed a polygraph, and knew that if he called Kimble to testify and he denied committing the murder, Combs could be called for impeachment evidence. However, defense counsel stated that he did not intend to employ the strategy of impeachment evidence. Considering the totality of the circumstances, the trial court did not abuse its discretion in determining that Kimble's alleged confession to Combs lacked circumstantial guarantees of trustworthiness to be admissible.[6] As such, where the evidence was inadmissible, the trial court's decision to deny admission of the evidence did not deprive defendant of his right to present a defense. See *Orlewicz*, 293 Mich App at 101-102.

## V. FAILURE TO SUA SPONTE SUPRESS EVIDENCE

Defendant next argues that the trial court erred by failing to sua sponte suppress the entirety of his June 5, 2013 police interview. We disagree.

The trial court conducted a *Walker*[7] hearing to determine the admissibility of defendant's police interviews on June 5, 2013, and June 20, 2013. When the trial court requested clarification regarding the statements that defendant sought to suppress, defendant asserted that once he invoked his right to silence at page 52 of the transcript for the June 5 interview, all of his statements after that invocation were inadmissible, including those made at a subsequent June 20 interview. The trial court agreed to suppress defendant's June 5 interview after page 50,[8] when defendant invoked his right to silence. It also ruled that the June 20 interview was admissible up to page seven, but agreed to suppress the remaining portion when defendant indicated that he was done talking. Defendant now argues for the first time on appeal that he invoked his right to counsel at pages 7-8 of the June 5 interview, and therefore, all statements made during that interview after page 7 should have also been suppressed, and further, that his invocation of the right to counsel at the June 5 hearing also requires that the June 20 interview be suppressed in its

---

[6] And, in regard to defendant's argument that the statement was admissible under MRE 804(b)(3), defendant failed to show that Kimble was unavailable to testify, creating another barrier to admissibility under that rule.

[7] *People v Walker*, 374 Mich 331; 132 NW2d 87 (1965).

[8] Although defendant argued that the invocation occurred on page 52 of the interview transcript, the trial court suppressed all statements beginning on page 50 of the transcript. The two-page discrepancy is not at issue on appeal. Rather, defendant argues for the first time on appeal that he unambiguously invoked his rights at the outset of the interview.

entirety. Because defendant did not argue in the trial court that any statements before page 50 of the June 5 interview should be suppressed, defendant's present claim is unpreserved.

We review for clear error a trial court's factual findings rendered when ruling on a motion to suppress. *People v Tanner*, 496 Mich 199, 206; 853 NW2d 653 (2014). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013). Unpreserved suppression issues are reviewed for plain error affecting substantial rights. *People v Wilson*, 242 Mich App 350, 355; 619 NW2d 413 (2000).

Both the United States Constitution, US Const, Am V, and the Michigan Constitution, Const 1963, art 1, § 17, prohibit compelled self-incrimination. *People v Elliott*, 494 Mich 292, 301 n 4; 833 NW2d 284 (2013). The prosecutor may not use the defendant's exculpatory or inculpatory statements arising from a custodial interrogation unless it demonstrates the application of procedural safeguards to protect the privilege against self-incrimination. *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966). "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id*. The defendant may waive his rights if the waiver is made voluntarily, knowingly, and intelligently. *Id*. Interrogation must cease if the defendant invokes his right to counsel. *Id*. at 473-474; *People v Harris*, 261 Mich App 44, 53; 680 NW2d 17 (2004).

The invocation of the right to counsel requires a statement that can reasonably be considered a desire for the assistance of counsel; an ambiguous or equivocal reference to an attorney does not require questioning to cease. *Davis v United States*, 512 US 452, 458-459; 114 S Ct 2350; 129 L Ed 2d 362 (1994); *People v Adams*, 245 Mich App 226, 237-238; 627 NW2d 623 (2001). In *Adams*, 245 Mich App at 238, this Court held that the statement, "Can I talk to him [a lawyer] right now?" was an "utterance . . . not sufficient to invoke the right to counsel and cut off all further questioning" because the context indicated that the defendant was seeking clarification regarding if and when he could speak to a lawyer. After the defendant was given time to think about it, he decided to answer some of the police questions at that time. *Id*. In *People v Granderson*, 212 Mich App 673, 676-678; 538 NW2d 471 (1995), this Court held that the defendant's expression that he would need an attorney in the future did not reflect a present desire for counsel, and assuming the request was unambiguous, the expression that the defendant *might* want a lawyer did not require police questioning to cease.

In the present case, defendant's statements during the early portion of the June 5 interview, viewed in context, indicate that defendant sought to determine why he was brought in for an interview. Defendant never made an unambiguous invocation of his right to silence. The detectives indicated that the purpose of the interview would be revealed during questioning if defendant agreed to waive his rights and speak to the detectives. Although defendant said he would "rather stop" and "[t]alk to a lawyer," he continued immediately thereafter, on his own accord, by stating that he was willing to be cordial to the detectives. Defendant continued conversing with the detectives, who explained that they wanted to talk to defendant and would tell him "what we're here for," but they could not do so unless defendant agreed, which was his right. Defendant indicated that he was reluctant to talk because he might want to stop the

-10-

interview, but after the detectives assured defendant that he could stop the interview at any time, defendant agreed to waive his rights and answer questions. Because the record does not reflect a clear, unambiguous invocation of the right to counsel at the beginning of the June 5 interview, there was no plain error in refusing to suppress the portion of that interview before page 50, or in refusing to suppress the June 20 interview in its entirety.

## VI. PROBABLE CAUSE TO ARREST

Defendant contends that he was arrested without probable cause and not thereafter timely arraigned.[9] Because defendant did not challenge the validity of his arrest or detention in the trial court, this issue is not preserved. *People v Danto*, 294 Mich App 596, 605; 822 NW2d 600 (2011). Accordingly, defendant's entitlement to appellate relief depends on whether he can establish a plain error affecting his substantial rights. *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006).

A police officer may arrest without a warrant if there is probable cause to believe that the defendant committed a felony. MCL 764.15; *Chapo*, 283 Mich App at 366-367. Probable cause exists when the facts and circumstances available to the officer are sufficient to warrant a reasonable person's belief that an offense had been or is being committed. *Chapo*, 283 Mich App at 367. The probable cause standard is objective and applies regardless of the motive or intent of the police officer. *Id*. An arrest without a warrant may occur when a peace officer has received positive information that "another peace officer or a court holds a warrant for the person's arrest." MCL 764.15(1)(e). Thus, the statute provides a basis for "a proper arrest when the officers are informed that another authority holds in his possession an outstanding warrant." *Hollis v Baker*, 45 Mich App 666, 669; 207 NW2d 138 (1973). Generally, the police officer is not required to make inquiry into the legality of the warrant if it appears valid on its face. *Id*.

In addition, a parole officer or peace officer may arrest without a warrant and detain a paroled prisoner if he has reasonable grounds to believe that the prisoner has violated parole or a warrant has issued for the parolee's return. MCL 791.239; *Jones v Dep't of Corrections*, 468 Mich 646, 652; 664 NW2d 717 (2003). "Pending a hearing upon any charge of parole violation, the prisoner shall remain incarcerated." MCL 791.238(1). Within 10 days of an arrest for an alleged parole violation, the parolee shall be entitled to a preliminary hearing to address whether probable cause exists to believe that the conditions of parole were violated or for a fact finding hearing. MCL 791.239a(1). See also *Elliott*, 494 Mich at 312 n 12.

Defendant asserts that the police could not have relied on an outstanding warrant for traffic violations to arrest him because the warrant for those violations was not issued until July 2, 2013, almost one month after he was arrested. Because defendant did not raise this issue below, there was little factual development regarding the basis for defendant's arrest. The record does disclose, however, that Carter had identified defendant as a suspect in the theft of his

---

[9] Defendant's arguments addressed in Sections VI though VIII were raised in his pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.

prescription medications. Although defendant contends that Carter's credibility was suspect, the police were able to validate his claims by obtaining video recordings from the hospital and interviewing Toth and Teasley. Defendant has not established that the police lacked probable cause to arrest him for the theft of Carter's medication, and therefore, he has not demonstrated a plain error.

We also reject defendant's argument that his continued detention after his arrest was illegal because he was not arraigned within 48 hours. See MCL 764.13; *People v Cain*, 299 Mich App 27, 49; 829 NW2d 37 (2012), vacated in part on other grounds 495 Mich 874 (2013). The record discloses that defendant admitted during his post-arrest interview that he violated the terms of his parole. After the interview ended, defendant's parole officer was notified of the violations, and a parole hearing was held the next day. MCL 791.239a(1). See also *Elliott*, 494 Mich at 312 n 12. Defendant admitted violating his parole and received a 30-day sentence for the parole violations, which he was serving when the warrant for the instant case was authorized. Thus, the record does not support defendant's claim that he was illegally detained.

## VII. EFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that he did not receive the effective assistance of counsel in the trial court. Because defendant did not raise an ineffective assistance of counsel claim in the trial court and this Court denied his motion to remand, our review of this issue is limited to errors apparent from the record. *Wilson*, 242 Mich App at 352. "Whether a defendant received ineffective assistance of trial counsel presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). To prevail on his claim, defendant must demonstrate that counsel's performance was below an objective standard of reasonableness and that, but for counsel's inadequate performance, "a different result would have been reasonably probable." *Id.* at 290. "There is a presumption that defense counsel was effective, and a defendant must overcome the strong presumption that counsel's performance was sound trial strategy." *People v Johnson*, 293 Mich App 79, 90; 808 NW2d 815 (2011). The burden of establishing the factual predicate for a claim of ineffective assistance is on the defendant. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant contends that trial counsel should have challenged the basis for his arrest, challenged the failure to timely present him to a magistrate following his arrest, and moved to suppress the entirety of his June 5, 2013 police interview. As previously discussed, the record fails to disclose that the police lacked probable cause to arrest defendant, given that Carter had identified defendant as the person responsible for the theft of his medication and the police had conducted an investigation to corroborate Carter's version of events. Further, defendant was not required to be brought before a magistrate within 48 hours after his June 5 arrest because he admitted to violating his parole and a parole hearing was held the next day, which resulted in defendant receiving a 30-day sentence. Because defendant cannot demonstrate that counsel could have successfully challenged his arrest or continued detention, counsel was not ineffective for failing to raise these claims. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant correctly notes that trial counsel did not challenge the first portion of his June 5, 2013 police interview. But as previously discussed, defendant has not demonstrated that he unequivocally invoked his right to counsel such that suppression would have been warranted. Furthermore, defendant has not overcome the presumption that counsel's failure to challenge the first 50 pages of defendant's June 5 interview was purposeful, as a matter of strategy. Counsel utilized the statement to show that defendant cooperated with the police and provided truthful information, consistent with information provided by other witnesses. That is, defendant admitted that he intended to engage in sex with Toth in Carter's presence, and that Toth then refused, but defendant did not become violent or enraged with her, and simply left Carter's home. Similarly, defendant's statement introduced evidence that he considered himself a "ladies man" who juggled multiple women. The statement allowed the defense to combat the prosecutor's theory that defendant would have felt compelled to go to extreme lengths of sexually assaulting and killing someone to satisfy his sexual needs. Because defendant did not make any admissions that directly linked him to the victim's sexual assault and death during the first portion of his June 5 interview, counsel's decision to not seek suppression of that portion of the interview did not fall below an objective standard of reasonableness. "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996). Further, contrary to defendant's assertion, trial counsel did challenge the admission of the second statement in its entirety.

## VIII. ADMISSION OF DEFENDANT'S SECOND INTERVIEW

Lastly, we reject defendant's argument that his June 20, 2013, interrogation was unlawful because the police reinitiated questioning after he invoked his right to remain silent at the June 5, 2013 interview. The trial court correctly held that, under *Maryland v Shatzer*, 559 US 98; 130 S Ct 1213; 175 L Ed 2d 1045 (2010), there was a break in custody to overcome any presumption of voluntariness established by *Edwards v Arizona*, 451 US 477; 101 S Ct 1880; 68 L Ed2d 378 (1981). Accordingly, defendant is not entitled to appellate relief. See *Shatzer*, 559 US at 112-114; *Elliott*, 494 Mich at 308-316 (holding that a parolee detained on a parole violation was not "in custody" for purposes of *Miranda*). Moreover, having reviewed defendant's challenged statements, we find no incriminating information, only denials by defendant that he knew the victim or that he saw her or had sex with her on the night of her murder. This was essentially the same argument defendant presented to the jury at trial. In light of the totality of the circumstances, even assuming error, we would find such error to be harmless beyond a reasonable doubt. See *People v Whitehead*, 238 Mich App 1, 7-12; 604 NW2d 737 (1999).

Affirmed.

/s/ Michael F. Gadola
/s/ Kathleen Jansen
/s/ Jane M. Beckering

-13-