PEOPLE v ADAMS

Docket No. 208006. Submitted November 13, 2000, at Detroit. Decided
April 6, 2001, at 9:05 A.M. Leave to appeal sought.

McConnell Adams, Jr., was convicted by a jury in the Oakland Circuit
Court, Rudy J. Nichols, J., of first-degree premeditated murder,
first-degree felony murder, and kidnapping for the kidnapping and
murder of a woman. The defendant was sentenced to a term of life
imprisonment without parole for each of the first-degree murder
convictions and twenty-five to sixty years' imprisonment for the
kidnapping conviction. The defendant appealed.

The Court of Appeals *held*:

1. The defendant did not unequivocally assert his right to counsel
or his right to remain silent while being questioned by the police,
and the police honored the defendant's decision not to answer
questions concerning certain limited topics. The court did not err
in denying the defendant's motion to suppress the defendant's vide-
otaped statement.

2. The defendant withdrew his request for a change of venue
before the court ruled on the request, thereby waiving the issue for
appellate review and extinguishing any error.

3. The court did not abuse its discretion in denying the defen-
dant's request to conduct a midtrial voir dire examination.

4. Dual convictions of first-degree premeditated murder and first-
degree felony murder arising out of the death of a single victim vio-
late double jeopardy protections. The judgment of conviction and
sentence must be modified to specify that the defendant is con-
victed of and sentenced for one count of first-degree murder sup-
ported by two theories: premeditated murder and felony murder.
The matter must be remanded to the trial court to amend the judg-
ment accordingly. The single conviction and single sentence for
first-degree murder, as modified, must be affirmed.

5. Convictions and sentences for both felony murder and the
underlying felony of kidnapping violate double jeopardy protec-
tions. The conviction and sentence for the underlying felony must
be vacated.

Affirmed in part, vacated in part, and remanded.

1. CRIMINAL LAW — DOUBLE JEOPARDY.

Dual convictions of first-degree premeditated murder and first-degree felony murder arising out of the death of a single victim violate double jeopardy protections; the proper remedy is to modify the judgment of conviction and sentence to specify that the defendant is convicted of and sentenced for a single count of first-degree murder supported by two theories: premeditated murder and felony murder (MCL 750.316).

2. CRIMINAL LAW — DOUBLE JEOPARDY.

Convictions of and sentences for both felony murder and the underlying felony of kidnapping violate double jeopardy protections; the proper remedy is vacation of the conviction and sentence for the underlying felony (MCL 750.316, 750.349).

3. CRIMINAL LAW — EVIDENCE — RIGHT TO COUNSEL — RIGHT TO REMAIN SILENT.

The admissibility of statements obtained from a person in custody after the person has decided to remain silent depends on whether the right to cut off questioning was scrupulously honored by the police; a limited assertion of the right to counsel does not preclude the admissibility of statements thereafter made by a defendant that fall outside the limited invocation of the right to counsel; a defendant who asserts the desire to deal with the authorities through counsel only in part may be questioned in a manner that does not intrude on that partial request for counsel.

4. CRIMINAL LAW — EVIDENCE — RIGHT TO COUNSEL — RIGHT TO REMAIN SILENT.

Law enforcement officers may continue questioning a suspect until or unless the suspect clearly requests an attorney where the suspect has knowingly and voluntarily waived his *Miranda* rights; invocation of the *Miranda* right to counsel requires a statement that can reasonably be construed to be an expression of a desire for the assistance of counsel; the cessation of questioning is not required if the suspect makes a reference to an attorney and the reference is ambiguous or equivocal in that a reasonable police officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel.

5. APPEAL — WAIVERS.

Waiver is the intentional relinquishment or abandonment of a known right; where known rights are waived under a rule, appellate review of a claimed deprivation of those rights is foreclosed because the waiver has extinguished any error.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *David Gorcyca*, Prosecuting Attorney, *Daniel L. Lemisch*, Chief, Appellate Division, and *Kathryn G. Barnes*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *David A. Moran*) and McConnell Adams, Jr., in propria persona.

Before: COLLINS, P.J., and JANSEN and WHITBECK, JJ.

JANSEN, J. Following a jury trial, defendant was convicted of first-degree premeditated murder, MCL 750.316, first-degree felony murder, MCL 750.316, and kidnapping, MCL 750.349. He was subsequently sentenced to two terms of life imprisonment without parole for the convictions of first-degree murder, and twenty-five to sixty years' imprisonment for the conviction of kidnapping. Defendant appeals as of right. Because defendant's convictions arise out of the death of a single victim, we order that defendant's judgment of sentence be modified to specify that defendant's conviction and single sentence is for one count of first-degree murder supported by two theories: premeditated murder and felony-murder. The underlying felony conviction and sentence for kidnapping are vacated.

I

Defendant was tried with his codefendant, Anitra Coomer[1], before separate juries in the Oakland Circuit Court in October 1997. The facts surrounding the

---

[1] Our opinion in codefendant Coomer's case is also being issued today. She was convicted of the same offenses as defendant.

death of Dr. Deborah Iverson have been set forth in detail in the companion case, *People v Coomer*, 245 Mich App 206; 627 NW2d 612 (2001), and we see no need to restate those facts here. Defendant's and codefendant Coomer's trial lasted ten days, although much of the testimony was presented to codefendant Coomer's jury only. There was virtually no physical evidence linking defendant to the murder, as there was with codefendant Coomer. Thus, this case focuses on the propriety of the admission of defendant's videotaped confession into evidence.

Dr. Deborah Iverson was strangled to death on May 16, 1996; however, it was not until certain events culminated on December 29, 30, and 31, 1996, that the police were able to determine that defendant and codefendant Coomer were involved in Dr. Iverson's murder. On December 29, 1996, defendant was in the custody of the Clawson Police Department regarding a stolen vehicle. Defendant was apparently released; however, he was arrested by Clawson police officers on December 30, 1996, and booked into the police station at 11:00 P.M. for a domestic assault charge filed by codefendant Coomer. After police officers obtained codefendant Coomer's statement at her apartment sometime around midnight, Detective Sergeant William Harvey of the Oakland County Sheriff's Department was informed and was asked to interview defendant.

Harvey first saw defendant at the Oakland County Jail at about 3:35 A.M. or 3:40 A.M. on December 31, 1996. After some preliminary discussion, the interview began at 3:47 A.M. and it is undisputed that defen-

dant was given his *Miranda*[2] warnings. Defendant fully confessed murdering Dr. Iverson and set forth the circumstances in detail. Defendant moved to suppress his videotaped statement at trial; however, the trial court denied the motion to suppress. On appeal, defendant raises two separate issues relative to his videotaped statement. He first claims that the trial court erred in denying the motion to suppress because he partially invoked his right to remain silent and his right to counsel regarding certain subjects and that Detective Harvey did not scrupulously honor that partial invocation of those rights. Defendant also claims that he unambiguously invoked his right to counsel and that Detective Harvey violated his right to counsel by failing to end the interrogation.

A

We first address defendant's argument that his statement should have been suppressed because he partially invoked his right to remain silent and his right to counsel regarding certain subjects and the police allegedly did not scrupulously honor that invocation. We review the record de novo, but the trial court's factual findings are reviewed under the clearly erroneous standard. *People v Kowalski*, 230 Mich App 464, 472; 584 NW2d 613 (1998).

In *Michigan v Mosley*, 423 US 96, 103; 96 S Ct 321; 46 L Ed 2d 313 (1975), the Supreme Court stated that a "critical safeguard" identified in *Miranda* was a person's right to cut off questioning. Consequently, by exercising the option to terminate questioning, the

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

person in custody can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation. *Id.* at 103-104. The Supreme Court, therefore, held that the admissibility of statements obtained after the person in custody has decided to remain silent depends on whether the right to cut off questioning was scrupulously honored by the police. *Id.* at 104; accord *Kowalski, supra* at 476.

Similarly, in *Connecticut v Barrett,* 479 US 523; 107 S Ct 828; 93 L Ed 2d 920 (1987), the Supreme Court held that a limited invocation of the right to counsel does not preclude the admissibility of statements made by a defendant that fall outside that limited invocation. In *Barrett,* the defendant refused to make a written statement without the presence of an attorney, but agreed to talk to the police verbally about the incident. The Supreme Court concluded that "Barrett made clear his intentions, and they were honored by police." *Id.* at 529. Thus, in *United States v Quiroz,* 13 F3d 505, 510-511 (CA 2, 1993), the court, citing *Barrett,* held that if a suspect asserts the desire to deal with the authorities through counsel only in part, the suspect may be questioned in a manner that does not intrude on that partial request for counsel.

Here, defendant argues that he partially invoked his right to remain silent and his right to counsel regarding certain subjects, such as motive and the identity of other persons involved in the crime. Defendant cites the following passages from the interrogation:[3]

---

[3] We note that we have fully and carefully reviewed in their entirety both the videotaped statement and the transcript of the statement attached to defendant's appellate brief.

WH:[4] Okay. Was the motive for this [to] pay your bills, take care of your baby? Take care of Anitra. . .

MA: I'm not going to answer that question.

WH: Okay, you don't have to, but that's an important why.

MA: That's an important why, but I'm not going to answer that question, 'till I have a lawyer present.

WH: Okay. . .

MA: But I'll answer—you can keep asking me questions and I'll answer the ones that I feel I can answer for you.

WH: Okay. Let me ask you another question. Was the intention that day to commit murder or was it just to do a robbery, even though you weren't armed, it was a—it could be construed to be an armed robbery. I'll put it this way. Was the intention to murder or just get money. We'll avoid the robbery altogether.

MA: I can't answer that one either.

WH: Well. . .

MA: I mean, I really can't. . .

WH: McConnell, how am I going to get anything as to whys, if you're not going to answer any questions.

\* \* \*

WH: I—I can understand your hesitancy to talk with us.

MA: Okay.

WH: Okay? For lack of a better word, the gig is up. . .

MA: Uh-hmm.

WH: It's done. It's done. All right.

MA: Okay.

WH: Uhm, the interview tonight. . .

MA: Uh-hmm.

WH: Was to explain. Okay? You're avoiding it. And I can understand your fear.

\* \* \*

WH: I'm just another man. I'm just another man that— that is doing a job, okay? I hate to see a young man because

---

4 "WH" refers to Detective William Harvey and "MA" refers to defendant McConnell Adams.

he's frightened and cornered again, make serious, serious mistakes. Okay? Now is your time to let the world know, that you're not a cold killer, that you have remorse for what happened and to give me the reason why this occurred. That this didn't start out as a murder, okay? That you didn't sit down and discuss killing somebody. The discussion was something else. The discussion was you needed money. I know that. Okay?

MA: Uh-hmm.

WH: But it's gotta come from you. Not from me. I wasn't there. I was there later on.

\* \* \*

WH: . . . Your concern should be that anybody down the line has a total understanding of what occurred that day.

MA: Well, from what I know, personally, that it was supposed to be a robbery. I'll give you that.

WH: Okay. Who did the robbery?

MA: Who did the robbery? I'll have to withhold that.

WH: For what reasons?

MA: For what reasons? Personal reasons. Uh, like I said, I'm not trying—I'm not trying to string anybody up. I know in a Court of Law, a spouse doesn't have to testify against another spouse.

We find that, contrary to defendant's claim, defendant did not unambiguously place certain subjects relating to the Iverson murder off limits. When defendant stated his desire not to talk about the motive for the Iverson murder without the presence of counsel, he made only a limited request for counsel regarding that particular question. In other words, the record shows that while defendant made an unambiguous, albeit limited, request for counsel with respect to answering the question about the motive for the Iverson murder, his immediate statement that Harvey could continue to ask questions about the Iverson murder and that he would answer "the ones that I feel

I can answer for you" permitted Harvey to question him further, within the limits that defendant established. See *People v Jackson*, 158 Mich App 544, 550-551; 405 NW2d 192 (1987) (The defendant's statement that he did not want to say anything about a gun was not an invocation of the right to remain silent, but was an indication that the defendant did not want to broach a particular subject matter, and, thus, the police officer's continuing interrogation was proper.); *People v Spencer*, 154 Mich App 6, 13; 397 NW2d 525 (1986) ("A defendant's assertion that suggests he wants to limit his answers is not an invocation of the right to remain silent.").

Thus, we agree with the trial court's ruling that defendant did not unequivocally assert a right to counsel or a right to remain silent. We further agree with the trial court that

> [defendant's] refusal to answer certain questions appeared not so much as a desire to remain silent as it was to selectively provide information yet conceal the method of death employed and/or the identity of the other persons. Though [d]efendant "refused to answer that one" or stated "I withhold that," he nevertheless continued discussing other facts of the incident. While resolutely asserting that he would not answer some of the questions, which refusals were honored by detectives, at no time did [defendant] ever make a clear, unequivocal request for either counsel or the right to remain silent. Instead he indicated he knew he had those rights yet made a conscious choice to proceed and answer other questions.

Because defendant only declined to answer some questions regarding a few limited topics and only asserted a need for counsel with respect to questions regarding motive, but did not unequivocally invoke his right to remain silent or his right to counsel, the

police detective was permitted to continue interviewing defendant regarding other matters pertaining to the Iverson murder. In fact, our review of the statement indicates that the police detective did honor defendant's decision not to answer questions concerning certain limited topics. Also, as in *Barrett, supra* at 529, defendant's limited request for counsel was accompanied by an affirmative announcement of a willingness to allow the police detective to continue asking questions and to answer those he felt he could answer.

Accordingly, the trial court did not err in denying defendant's motion to suppress his videotaped statement because there was no violation of his limited invocation of the right to counsel and to remain silent.

B

Defendant next contends, with respect to his videotaped statement, that the trial court erred in denying his motion to suppress that alleged that he unambiguously invoked his right to counsel and that the police detective violated his right to counsel by failing to obtain counsel for him and cease questioning immediately. We again review the record de novo, but review the trial court's factual findings for clear error. *Kowalski, supra* at 472.

Well after defendant was advised of and waived his *Miranda* rights,[5] the following colloquy occurred during the interrogation:

---

[5] We note at this juncture that defendant has not raised as an issue on appeal whether his statement was voluntarily given. Consequently, we need not decide the voluntariness of the statement.

MA: So when would I be able to talk to a lawyer if I wanted to talk to a lawyer?

WH: We can stop the interview right now.

MA: Can I talk to him right now?

WH: Sure. We'll stop the interview. Once you say you want to talk to a lawyer, by law, I stop immediately. Okay? And will not continue. All right?

MA: Can you give me about five minutes just to sit here and think?

WH: Certainly can. We'll pull everything out. Can we sit in here with you? You want uh. . .

MA: That's your decision, it doesn't matter if you're in here or not.

WH: Okay. Just consider one thing.

MA: What's that?

WH: That once you say you want a lawyer, our interview is done. And quite possibly the chances for an explanation as to what went wrong that day goes out the tubes. Possibly. Very probably. Okay? As I told you before, this is your one shot.

MA: What is this my one shot to?

WH: This is your one shot to help yourself. After this, and if you want a lawyer, that's full within your [r]ights, and I'm not going to impede that, slow that down, stop that or sway you one way or another. . .

MA: Well what I know—what went wrong that day—from what I know, okay? What I know.

WH: Why don't you stop and think for a minute.

MA: Oh, I am, I am thinking as I go along.

WH: So just—don't—don't talk to me anymore until you're sure. Okay? I want you sure in here.

MA: Is there any way that one person can take the fall for another person without the other person being prosecuted? Is there any way that could happen?

WH: Well, you're asking for a deal. I can't do that.

*     *     *

WH: But what I have to get is—is you mentioned about a lawyer and you want to think about one. I have to get from

you now is, is that the way you're willing to do the questioning.

MA: No, I'll answer some of your questions right now.

WH: Hmm?

MA: I was about to answer some of your questions right now. I still—later on want a lawyer, of course.

WH: Oh of course. You—of course that happens McConnell. But I have to stay within the parameters of the law and I can't go into questioning if you want an attorney now. I have to stop.

MA: Okay. What I know, is like I said before it started out as a robbery. From what else I know is what went wrong with it was that it wasn't—the doctor saw too much, was gonna know too much.

In *Edwards v Arizona*, 451 US 477, 484-485; 101 S Ct 1880; 68 L Ed 2d 378 (1981), the Supreme Court held that when an accused invokes the right to have counsel present during a custodial interrogation, the accused is not subject to further interrogation by the police until counsel has been made available, unless the accused initiates further communication, exchanges, or conversations with the police. The Supreme Court in *Davis v United States*, 512 US 452; 114 S Ct 2350; 129 L Ed 2d 362 (1994), further clarified *Edwards* and stated that courts must determine whether the accused actually invoked the right to counsel and that this constitutes an objective inquiry. *Id.* at 458-459. Thus, invocation of the *Miranda* right to counsel requires a statement that can reasonably be construed to be an expression of a desire for the assistance of counsel. *Id.* at 459. If the accused makes a reference to an attorney and the reference is ambiguous or equivocal in that a reasonable police officer in light of the circumstances would have understood only that the accused might be invoking the right to

counsel, the cessation of questioning is not required. *Id.* Thus, the Supreme Court summed up its holding as, "after a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." *Id.* at 461.

The question here is whether defendant's statement, "Can I talk to him [a lawyer] right now?" constitutes a clear request for an attorney. We hold that this utterance was not sufficient to invoke the right to counsel and cut off all further questioning under the specific circumstances of this case. The transcript reveals that defendant began this exchange with the police detective by asking when he would be able to talk to a lawyer *if* he wanted to do so. Only when the police detective correctly answered that they could stop the interview "right now" did defendant ask if he could talk to an attorney "right now?" The police detective then, again correctly, told defendant that they would stop the interview if he wanted to talk to a lawyer. Critically, defendant next asked for "about five minutes" to think. This clearly indicated that defendant's previous questions were merely inquiries into the way the process worked, not an actual demand for an attorney. Further, when defendant subsequently began to talk about the crime, the police detective asked him to "stop and think for a minute," to which defendant responded, "I am thinking as I go along." The police detective stopped defendant and urged him to think about what he was doing yet another time. Despite these warnings, defendant still stated that he was willing to answer "some" of the police detective's "questions right now."

This colloquy makes clear that defendant knew of his right to counsel and knew that requesting an attorney would stop the interview. Nevertheless, defendant chose to continue the interview. In this context, we think it plain that the words defendant now cites in isolation do not constitute an unambiguous invocation of the right to counsel. Indeed, in this context, defendant's question was more equivocal that the statement in *Davis*, where the suspect said, " 'Maybe I should talk to a lawyer.' " *Id.* at 462. Additionally, the police detective in the present case did precisely what the Supreme Court characterized as "good police practice" by clarifying whether defendant actually wanted an attorney. *Id.* at 461. Under these circumstances, we conclude that defendant's statement, "Can I talk to him right now?" was ambiguous and insufficient to invoke the right to counsel at his custodial interrogation. Therefore, the police detective was not required to cease all questioning. Accordingly, the trial court did not err in denying defendant's motion to suppress the videotaped statement on the basis that defendant did not unequivocally assert the right to counsel.

II

Defendant also argues in a supplemental brief filed in propria persona that he was denied his right to a fair trial because his motion for a change of venue was not granted. Defendant contends that because of the extensive pretrial publicity, including a media broadcast of his videotaped statement, venue should have been changed. This issue, however, has been waived for appellate review because defendant with-

drew his motion for a change of venue before the trial court ruled on it.

Waiver is the " 'intentional relinquishment or abandonment of a known right.' " *United States v Olano*, 507 US 725, 733; 113 S Ct 1770; 123 L Ed 2d 508 (1993), quoting *Johnson v Zerbst*, 304 US 458, 464; 58 S Ct 1019; 82 L Ed 1461 (1938). Forfeiture, on the other hand, is the failure to timely assert a right. *Id.* If any rights are waived under a rule, appellate review of a claimed deprivation of those rights is foreclosed because the waiver has extinguished any error. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). Consequently, because the request for a change of venue was withdrawn before the trial court ruled on it, the issue has been waived for appellate review and the waiver has extinguished any error.

III

Defendant further argues in his supplemental brief that the trial court abused its discretion in denying his request to conduct a midtrial voir dire examination. Defendant specifically contends that the jury was prejudiced by the extensive media coverage in this case. The trial court's decision whether to conduct a midtrial voir dire examination is reviewed for an abuse of discretion. *People v Conte*, 104 Mich App 73, 80; 304 NW2d 485 (1981), aff'd on other grounds 421 Mich 704; 365 NW2d 648 (1984).

After the prosecution presented its witnesses, defense counsel requested that the trial court conduct further voir dire of the jurors, essentially because of the extensive publicity of the case and to ensure that the jurors had not heard information that they should

not have been privy to. The trial court denied defense counsel's request, noting that it had repeatedly instructed the jury to avoid publicity about the case, that the jurors might feel intimidated or harassed by further questioning, and that further questioning could chill free and full jury deliberations about the evidence.

We find no abuse of discretion on the part of the trial court. Here, the request for a midtrial voir dire examination was made not on the basis of any suspected juror misconduct, but, rather, on the speculative possibility that juror misconduct might be revealed after trial. There is simply no indication that the jury ignored the trial court's repeated instructions to avoid publicity surrounding the case, nor was there any indication that the jury's impartiality had been compromised. Thus, there was no indication that any juror was improperly exposed to media coverage of the case. Therefore, the trial court did not abuse its discretion in denying defendant's request for a midtrial voir dire examination.

IV

Lastly, we address defendant's argument that his multiple convictions and sentences for first-degree premeditated murder, first-degree felony murder, and the underlying felony of kidnapping arising out of the death of a single victim violate double jeopardy. The prosecution concedes that the judgment of sentence should be amended.

Where dual convictions of first-degree premeditated murder and first-degree felony murder arise out of the death of a single victim, the dual convictions

violate double jeopardy. *People v Bigelow*, 229 Mich App 218, 220-222; 581 NW2d 744 (1998). The proper remedy is to modify the judgment of conviction and sentence to specify that defendant's conviction is for one count and one sentence of first-degree murder supported by two theories: premeditated murder and felony murder. *Id.* at 220-221. Likewise, defendant's convictions and sentences for both felony murder and the underlying felony of kidnapping violate his right against double jeopardy. *People v Gimotty*, 216 Mich App 254, 259; 549 NW2d 39 (1996). The proper remedy is to vacate the conviction and sentence for the underlying felony. *Id.* at 259-260.

Therefore, defendant's conviction and single sentence for first-degree murder, as modified, are affirmed. We remand to the trial court to amend the judgment of sentence to specify that defendant's conviction is for one count and one sentence of first-degree murder supported by two theories: premeditated murder and felony murder. The conviction and sentence for kidnapping are vacated.

Affirmed in part, vacated in part, and remanded for proceedings consistent with this opinion. Jurisdiction is not retained.