# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

RAYMOND FRANK GAYDEN,

      Defendant-Appellant.

UNPUBLISHED
May 10, 2018

No. 336330
Wayne Circuit Court
LC No. 16-004174-01-FC

---

Before: CAVANAGH, P.J., and STEPHENS and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of felonious assault, MCL 750.82; possession of a firearm by a person convicted of a felony (felon-in-possession), MCL 750.224f; and possession of a firearm during the commission of a felony (felony-firearm) (second offense), MCL 750.227b. The trial court sentenced defendant, as a fourth habitual offender, MCL 769.12, to 4 to 15 years of imprisonment for his felonious-assault conviction, 58 months to 20 years of imprisonment for his felon-in-possession conviction, and 5 years of imprisonment for his second-offense felony-firearm conviction. We affirm defendant's convictions and sentences, vacate the imposed late fee, and remand for correction of the presentence investigation report (PSIR).

## I. DISCOVERY ERROR

On appeal, defendant first argues that the late discovery of his telephone records denied him a fair trial because he was not granted an adjournment so that he could obtain an expert to analyze and possibly provide an alternative opinion related to the telephone records. We disagree.

We review de novo whether a defendant received a fair trial. *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). We review a trial court's decision and remedy regarding a discovery violation for an abuse of discretion. *People v Dickinson*, 321 Mich App 1, 17; ___ NW2d ___ (2017). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

MCR 6.201 governs discovery in criminal matters and provides, in part:

-1-

(A) Mandatory Disclosure. In addition to disclosures required by provisions of law other than MCL 767.94a, a party upon request must provide all other parties:

* * *

(3) the curriculum vitae of an expert the party may call at trial and either a report by the expert or a written description of the substance of the proposed testimony of the expert, the expert's opinion, and the underlying basis of that opinion

* * *

(5) a description of and an opportunity to inspect any tangible physical evidence that the party may introduce at trial, including any document, photograph, or other paper, with copies to be provided on request

"There is no general constitutional right to discovery in a criminal case," and accordingly, a discovery violation related to MCR 6.201(A) is "nonconstitutional in nature." *People v Elston*, 462 Mich 751, 765-766; 614 NW2d 595 (2000). As well, a trial court's failure to remedy a discovery violation by granting a continuance is also nonconstitutional in nature. *Id*. at 766. Preserved, nonconstitutional discovery violations do not require reversal unless a defendant establishes that it is more probable than not that the violation was outcome determinative. *Id*. An error is outcome determinative if it undermined the reliability of the verdict, considering the nature of the error in light of the weight and strength of the untainted evidence. *Id*. "When determining the appropriate remedy for discovery violations, the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." *People v Banks*, 249 Mich App 247, 252; 642 NW2d 351 (2002).

A week before trial, the prosecutor realized that defendant's cellular telephone records, which had been obtained by a search warrant, were never analyzed. The prosecutor asked retired Alcohol, Tobacco, and Firearms Special Agent Stanley Brue to perform an analysis on the records, which resulted in a conclusion that defendant was near the crime scene when the event occurred. The prosecutor immediately informed defense counsel of the records' existence and Brue's conclusion, and defense counsel acknowledged that the conclusion did not conflict with the defense theory.

In chambers, before the first day of trial, and again on the record before the beginning of trial, defense counsel said that she would not object to the admission of the telephone records because they did not conflict with the defense theory. On the first day of trial, during the prosecutor's opening statement, he briefly referenced that the telephone records "will describe the defendant's location where he was at around the time of the crime."

At the conclusion of the first day of trial, the prosecutor met with Brue and a map and spreadsheet were created related to the records. Later that evening, Brue emailed the report to the prosecutor, which the prosecutor immediately forwarded to defense counsel. The following morning, which was the second day of trial, the prosecutor provided defendant with a hardcopy

of the report. During the second day of trial, several witnesses testified in a manner that caused defense counsel to change her defense theory.

On the third day of trial, before Brue testified, defense counsel objected to the admission of the exhibits, stating that they violated the discovery rules and that the late testimony and disclosure prevented her from providing effective assistance of counsel because, had she known in advance of their potential admission, she would have sought an expert to review the telephone records. Defense counsel requested an adjournment so that she could obtain her own expert. The trial court acknowledged that this matter had been discussed in chambers and on the record previously, and that defense counsel originally agreed to admit the evidence because it was not inconsistent with the defense theory at that time. Following the trial court's denial of defendant's request for an adjournment, Brue testified that based on the telephone records, defendant's telephone was near the scene of the crime, but changed locations shortly after. In addition, the report containing the map and spreadsheet was admitted into evidence.

As an initial matter, defendant correctly points out that defense counsel waived this issue. "Waiver is the intentional relinquishment or abandonment of a known right. . . . If any rights are waived under a rule, appellate review of a claimed deprivation of those rights is foreclosed because the waiver has extinguished any error." *People v Adams*, 245 Mich App 226, 240; 627 NW2d 623 (2001) (internal citations and quotation marks omitted). On the first day of trial, defense counsel agreed to the admission of the telephone-record evidence because it was not inconsistent with the defense theory. Although defense counsel changed her defense theory on the third day of trial, the waiver had already occurred. Notwithstanding the waiver, it is evident that a discovery violation occurred because the prosecutor did not timely disclose evidence in his possession. See *Kyles v Whitley*, 514 US 419, 437; 115 S Ct 1555; 131 L Ed 2d 490 (1995).

Defendant cannot show, however, that he was prejudiced by the late disclosure or by the trial court's denial of his counsel's requested adjournment so that she could seek her own expert. Defendant appears to argue that the evidence, in itself, prejudiced him. Defendant cites several factually dissimilar and nonbinding cases to support a premise that cellular-telephone-tower evidence can be faulty, but makes no assertion that this specific analysis is flawed. Defendant's framing of the issue is misplaced, as all evidence is prejudicial. *People v Murphy*, 282 Mich App 571, 582-583; 766 NW2d 303 (2009). The proper analysis is whether the late disclosure, in itself, prejudiced defendant.

It is clear from the record that the late disclosure had no impact on whether defendant would have sought an expert opinion. Defense counsel did not challenge the records' admission until after several prosecution witnesses were impeached at trial. In effect, the trial was going better for the defense than defense counsel originally anticipated. Given that she did not anticipate the problems that the prosecutor had with his witnesses—and there is nothing in the record to suggest that she should have anticipated such problems—defense counsel's pretrial strategy would not have involved challenging the records because that strategy did not depend on defendant being at the scene at the relevant time. In short, regardless of whether the discovery was timely or late, defendant would have been in the same tactical position. Accordingly, defendant has failed to meet his burden to show that the alleged error was outcome determinative. Similarly, he has failed to show that he was prejudiced, undermining his

ineffective-assistance-of-counsel claim. *People v Walker*, 497 Mich 894, 895; 855 NW2d 744 (2014).

## II. PROSECUTORIAL MISCONDUCT

Defendant next asserts that the prosecutor argued facts not in evidence during closing argument. Specifically, defendant alleges that the prosecutor improperly argued to the jury that defendant admitted to police that he owned and possessed the cellular phone during the time of the crime. We disagree.

Defendant did not object to the prosecution's argument or request a curative instruction and has failed to preserve this error for our review. *Unger*, 278 Mich App at 235. Unpreserved errors are reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To avoid forfeiture under the plain-error rule, defendant bears the burden of proving a clear error that affected the outcome of the judicial proceedings. *Id*. This Court will not "find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *People v Bennett*, 290 Mich App 465, 476; 802 NW2d 627 (2010) (internal citation and quotation marks omitted).

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). "Issues of prosecutorial misconduct are decided case-by-case, and this Court must examine the entire record and evaluate the prosecutor's remarks in context." *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014) (internal citation and quotation marks omitted). During closing argument, the prosecutor stated:

> We know because his cell phone was with him, and we know that he's making phone calls right near the crime scene, or receiving phone calls right near the crime scene and at 9:53 p.m. and 10:00 p.m. And we know that the 911 call was placed at 9:47 p.m.

> *  *  *

> Have you ever lost your phone? Do you remember the panic, the worry where you left it, the mind racing, going back to different places, searching frantically? Because our phones aren't just our phones. They're our pictures, our music, our texts, our personal things on the phone, our calculators.

> Losing a phone is not something that's just taken lightly and forgotten. And when he sat down with Sgt. LaLone, he never said anything of the sort. He didn't say it was gone, it was missing, or that he had loaned it to somebody. He just said, It's my phone.

A reasonable inference can be made that when defendant provided his telephone number to the police officer, the officer understood that defendant owned or controlled the telephone associated with that number. Further, that by owning or controlling the telephone, a reasonable inference can be made that defendant carried that telephone, especially when it was a mobile

-4-

telephone. Taken in context, it does not plainly appear that the prosecution was actually quoting defendant's exact language—merely that defendant told the police that they could reach him on his telephone at the telephone number he provided. Accordingly, the prosecutor's statements were reasonable inferences made by common sense and everyday experience and were not error.

Further, even if the statements were erroneous, reversal is not warranted because defendant has not shown that the statements affected his substantial rights. See *Carines*, 460 Mich at 763. Testimony from three witnesses also placed defendant at the scene of the crime and confirmed that defendant drove away from the shooting in a blue Ford Explorer. Three witnesses also testified that defendant pointed a gun at Samuels's face or head. For his part, defendant acknowledged in the police interview that he drives a blue Ford Explorer. Defendant also acknowledged in the interview that he lived in the immediate vicinity of the crime scene. Accordingly, defendant's presence at the crime scene was sufficiently established at trial apart from the telephone records.

Moreover, a curative instruction would have likely removed the prejudicial effect of any of the allegedly erroneous prosecutorial statements. See *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). Although defendant did not object or request a curative instruction, the trial court instructed the jurors to consider only "the evidence that has been properly admitted in this case," and that "[t]he lawyers' statements, and arguments, and any commentary are not evidence." These instructions to the jury were sufficient to alleviate any prejudicial effect of the allegedly inappropriate prosecutorial statements. Accordingly, defendant has not shown that his substantial rights were affected by the prosecutor's statements during closing. Similarly, he cannot show that he was prejudiced by defense counsel's failure to object to the prosecutor's remarks and therefore his related ineffective-assistance-of-counsel claim fails. *Walker*, 497 Mich at 895.

III. LATE FEES

Defendant argues that because the trial court failed to specify a due date for the collection of assessed fees, it erred by assessing a 20% late fee because that assessment violated the Legislature's intent. Because defendant failed to object at trial to the fees, the issue is unpreserved. *People v Considine,* 196 Mich App 160, 162; 492 NW2d 465 (1992). An unpreserved issue is reviewed for plain error affecting the defendant's substantial rights. *Carines*, 460 Mich at 763.

"Courts may only impose costs in a criminal case when such costs are authorized by statute." *People v Juntikka*, 310 Mich App 306, 310; 871 NW2d 555 (2015). The "primary purpose in construing statutes is to discern and give effect to the Legislature's intent." *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006) (internal citation and quotation marks omitted). MCL 600.4803(1), provides, in relevant part:

(1) A person who fails to pay a penalty, fee, or costs in full within 56 days after that amount is due and owing is subject to a late penalty equal to 20% of the amount owed. The court shall inform a person subject to a penalty, fee, or costs that the late penalty will be applied to any amount that continues to be unpaid 56 days after the amount is due and owing. Penalties, fees, and costs are due and

owing at the time they are ordered unless the court directs otherwise. The court shall order a specific date on which the penalties, fees, and costs are due and owing. If the court authorizes delayed or installment payments of a penalty, fee, or costs, the court shall inform the person of the date on which, or time schedule under which, the penalty, fee, or costs, or portion of the penalty, fee, or costs, will be due and owing. A late penalty may be waived by the court upon the request of the person subject to the late penalty.

The October 27, 2016 judgment of sentence ordered defendant to pay $2,034, which, in part, included $1,300 in court costs and $400 in attorney fees. The assessed amount was entered the following day. The judgment of sentence, however, did not assign a "specific date on which the penalties, fees, and costs are due and owing," as the trial court left the appropriate space blank. On December 24, 2016, 58 days after the original amount was entered, an additional "Transaction Assessment" was entered in the register of actions for $340, which appears to represent 20% of the original court costs and attorney-fees assessment. The lower court file is devoid of any order beyond the judgment of sentence that is relevant to this assessment.

MCL 600.4803(1) states, "The court *shall* order a specific date on which the penalties, fees, and costs are due and owing." (Emphasis added). "The Legislature's use of the term 'shall' indicates that this is a mandatory directive." *People v Comer*, 500 Mich 278, 289 n 26; 901 NW2d 553 (2017).

The trial court plainly erred because the statute clearly requires the trial court to order a "specific" date on which "penalties, fees, and costs are due and owing." The plain error affected defendant's substantial rights in that it required defendant to pay an addition $340.

## IV. PSIR INACCURACIES

Finally, defendant argues that he is entitled to an updated PSIR because the trial court failed to memorialize certain inaccuracies discussed at sentencing. At sentencing, defendant challenged the PSIR's accuracy and OV scoring. Specifically, defendant contended that (1) trial counsel's name was incorrectly identified and incorrectly listed as "retained," (2) he had 183 days jail credit instead of 400, (3) he was employed, (4) he should not be required to pay the DNA testing fee because his DNA was already in the system, (5) he was mandated a five-year sentence instead of a two-year sentence for his felony-firearm conviction, (6) his 24-year-old child was disabled and not employed, (7) OV 10 should be assessed at 15 points, and (8) OV 3 should be assessed at zero points. The prosecution stated that the PSIR should indicate, under consecutive sentences, that "consecutive sentencing did not apply."

Except for defendant's contention related to his employment status, the trial court agreed that the PSIR was inaccurate and stated that the record would be updated. Regarding defendant's employment status, defendant argued that he was employed at the time of the offense, and that, if not for the incarceration, he would still be employed. He maintained that his employment status should be considered at the time of the offense and not at the time the PSIR was authored. The trial court found that the employment status should represent defendant's employment status at the time of the PSIR creation, and not at the time of the offense. On this point, we agree with the trial court.

-6-

Notably, MCL 771.14 controls the content, and handling, of the PSIR. Although the statute provides several requirements as to what the report must contain, it does not require defendant's employment status to be included. Thus, it cannot be said that the trial court abused its discretion when it disagreed with defendant's argument. The PSIR was accurate at the time it was authored, as well as at the time of sentencing, when it indicated that defendant was unemployed.

On the other points identified by defendant, we agree that the PSIR should be corrected. The trial court explicitly found several corrections were necessary to make the PSIR accurate. Defendant is entitled to have an updated PSIR provided to MDOC "[b]ecause [MDOC] makes critical decisions concerning a defendant's status on the basis of information contained in the PSIR." See *People v Waclawski*, 286 Mich App 634, 689; 780 NW2d 321 (2009).

We affirm defendant's convictions and sentences, vacate the imposed late fee, and remand for correcting the PSIR consistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens
/s/ Brock A. Swartzle